29 F.3d 630
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Dikran Sarkis BERBERIAN, Petitioner,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 92-70252.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Sept. 1, 1993.
Decided July 12, 1994.
 
 1
 Before BRUNETTI, KOZINSKI, and BOGGS,* Circuit Judges.
 
 
 2
 MEMORANDUM**
 
 
 3
 Dikran Sarkis Berberian, a native and citizen of Lebanon, petitions this court to review the Board of Immigration Appeals' ("BIA") denial of his application for asylum. We deny the petition.
 
 
 4
 * We review the BIA's factual findings for substantial evidence and the ultimate denial of asylum for abuse of discretion. Berroteran-Melendez v. INS, 955 F.2d 1251, 1255 (9th Cir.1992); Sanchez-Trujillo v. INS, 801 F.2d 1571, 1578 (9th Cir.1986).
 
 
 5
 In declining to exercise its discretion to grant Berberian's application, the BIA reversed the decision of the Immigration Judge ("IJ"). The BIA conducts a de novo review of the record and may make its own findings and independently determine the legal sufficiency of the evidence. Elnager v. INS, 930 F.2d 784, 787 (9th Cir.1991). Therefore, this court's review is generally limited to the BIA's decision. Charlesworth v. INS, 966 F.2d 1323, 1325 (9th Cir.1992). However, if the IJ and the BIA have reached different conclusions, "the appellate court's reviewing eye may be more searching." Laipenieks v. INS, 750 F.2d 1427, 1429-30 (9th Cir.1985). "Although this court reviews the decision of the BIA, we may properly consider the IJ's findings if in conflict with those of the BIA." Hernandez-Robledo v. INS, 777 F.2d 536, 539 (9th Cir.1985). Thus, we may review the entire record to determine whether the BIA abused its discretion.
 
 II
 
 6
 To be eligible for a grant of asylum under section 208(a) of the Immigration and Nationality Act ("the Act"), 8 U.S.C. Sec. 1158(a), an alien must establish that he or she is a refugee within the meaning of section 101(a)(42)(A), 8 U.S.C. Sec. 1101(a)(42)(A). If refugee status is established, the alien must also show that he or she merits asylum as a matter of discretion. 8 U.S.C. Sec. 1158(a); INS v. Stevic, 467 U.S. 407, 423 n. 18. (1984).
 
 
 7
 In this case, the INS did not appeal the IJ's finding that Berberian had established that he was a "refugee" and the BIA did not rule on this finding. The BIA reversed the IJ's grant of asylum on the ground that she erred in her exercise of discretion.
 
 
 8
 "In reviewing a BIA decision for abuse of discretion, we require that its stated reasons evidence its consideration of all relevant factors." Mattis v. INS, 774 F.2d 965, 967 (9th Cir.1985). We may set aside the BIA's denial of relief if it "fails to support its conclusions with a reasoned explanation based upon legitimate concerns." Vargas v. INS, 831 F.2d 906, 908 (9th Cir.1987).
 
 
 9
 Berberian contends that the BIA abused its discretion in denying his application for asylum by failing to consider the entire record, misconstruing facts and failing to consider relevant evidence including: (1) family ties; (2) residence of long duration; (3) hardship; (4) history of employment; (5) service to the community; and (6) rehabilitation. The INS argues that the BIA considered all pertinent evidence and properly exercised its discretion in denying asylum.
 
 
 10
 A review of the BIA's opinion shows that the BIA did consider the relevant factors. The BIA thoroughly reviewed the IJ's reasoning. It weighed several factors in favor of a grant of asylum including: Berberian's family ties in the United States; his lack of family ties in Lebanon; the fact that his wife and son intended to remain in the United States if he is deported; evidence of rehabilitation; Berberian's involvement in the community; and the great likelihood of persecution he faces if he returns to Lebanon. The BIA also drew attention to the probation officer's report, a one-page letter noting that Berberian is allowed to travel throughout the United States in pursuit of his business as a self-employed wholesale jewelry representative. Although the BIA's decision does not specifically mention Berberian's employment, it alludes to it in discussing the probation officer's report and Berberian's travels around the country. In the circumstances of this case, in which the bulk of the favorable evidence centered around Berberian's rehabilitation, family ties, and service to the community, we find that the BIA's reference to the probation officer's letter and to Berberian's travels shows that it was aware of and considered Berberian's employment.
 
 
 11
 The BIA's opinion does not indicate that it considered the length of Berberian's residence in the United States as a relevant, favorable factor. Berberian entered the United States in 1980. At the time of the BIA's decision, he had resided here for approximately twelve years. As the INS points out, however, for much of this time he was either on bail or in prison. Therefore, his residence in the United States is not so lengthy that it is a relevant favorable factor, and the BIA's failure to consider it expressly was not error.
 
 
 12
 While the BIA in some instances failed to specify every piece of evidence that Berberian offered under each of the relevant favorable factors, this does not amount to a failure to consider these factors and does not require reversal. "Although we have required the Board to provide more than mere conclusory statements, all that is necessary is a decision that sets out terms sufficient to enable us as a reviewing court to see that the Board has heard, considered, and decided." Villanueva-Franco v. INS, 802 F.2d 327, 330 (9th Cir.1986). The BIA's decision in this case satisfies that standard.
 
 
 13
 Berberian also argues that the BIA failed to weigh properly the adverse factor of his conviction of conspiracy to bomb and aiding and abetting transportation of explosive materials. See United States v. Berberian, 851 F.2d 236 (9th Cir.1988), cert. denied, 489 U.S. 1096 (1989). He argues that the BIA erred in concluding that his prior conviction was "egregious" and "heinous" without specifically considering the circumstances and underlying facts of the crime.
 
 
 14
 A review of the BIA's decision shows that the BIA looked at the facts behind Berberian's conviction and explained the basis for its conclusion that the conviction was serious. The BIA stated that it did not agree with the IJ that Berberian's role in the underlying conspiracy was minor. It noted that Berberian purchased the materials necessary to make the explosive device, which "is an integral part of the success of the conspiracy." It concluded that even if he was not aware of the intended target, he was still morally culpable because of the substantial likelihood of "bodily injury or loss of life that inherently accompanies such an act." The BIA also considered evidence indicating that Berberian had been suffering from post-traumatic stress disorder at the time of the conspiracy, but determined that his mental state did not mitigate the seriousness of his knowing and willful participation in the conspiracy. Its conclusion that "the planned bombing represented a danger to the welfare and security of the country" is supported by the evidence. The BIA was not required to enumerate specifically all the evidence and considerations it weighed in finding that the conviction was serious. See Villanueva-Franco, 802 F.2d at 330.
 
 
 15
 Contrary to Berberian's contention, the BIA did not pretermit his asylum claim. Rather, it carefully balanced the countervailing concerns of "the unusually harsh consequences which may befall an alien who has established a well-founded fear of persecution," Matter of Pula, 19 I & N Dec. 467 (1987), and the egregious nature of Berberian's crime. The BIA discussed both favorable and unfavorable factors accurately and thoroughly. It did not abuse its discretion in denying Berberian's application for asylum.
 
 III
 
 16
 Berberian also appeals the BIA's finding that he is deportable under section 241(a)(7) of the Act, 8 U.S.C. Sec. 1251(a)(7),[1] which provides for the deportation of any alien who has had a purpose to engage in certain defined activities.
 
 
 17
 The IJ found that Berberian was deportable under sections 241(a)(2) (overstaying nonimmigrant visa) and 241(a)(4) (conviction of a crime involving moral turpitude) of the Act, but found the INS did not sustain its burden in proving that he was also deportable under section 241(a)(7).
 
 
 18
 On appeal, the BIA affirmed the IJ's finding of deportability under sections 241(a)(2) and (a)(4). The BIA also found Berberian deportable under section 241(a)(7), and Berberian appeals that finding. Since he does not contest his deportability under the other two sections, we need not address the issue of whether he was properly found deportable under section 241(a)(7). There is no indication that the BIA's finding of deportability under section 241(a)(7) affected its exercise of discretion in denying asylum. It simply based both decisions on its view of the same underlying facts.
 
 IV
 
 19
 Finally, Berberian argues that the order to show cause issued against him failed to provide adequate notice of the charges against him because it was "incomprehensible," depriving him of his Fifth Amendment right to due process and a fair hearing.
 
 
 20
 Berberian complains specifically of the charge under section 241(a)(7) of the Act, arguing that since it is written in the disjunctive, it gives him little notice of what portions of the statute the INS relies upon.
 
 
 21
 An alien must be given reasonable notice under the circumstances of the nature of the charges. 8 U.S.C. Sec. 1252(b). However, as the INS points out, Berberian never made a motion for a more definite statement, and he demonstrated that he understood the nature of the charge when at an initial hearing, his counsel denied deportability under section 241(a)(7) without raising any objection regarding its ambiguity.
 
 
 22
 As Berberian had sufficient notice of the charges pending against him, his due process rights were not violated.
 
 
 23
 PETITION DENIED.
 
 
 
 *
 Honorable Danny J. Boggs, United States Circuit Judge for the Sixth Circuit, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Circuit Rule 36-3
 
 
 [1]
 The 1990 amendments to the Act restructured and revised the classes of deportable aliens. Deportation proceedings in this case preceded the effective date of the amendments. Statutory citations are to the Act as it existed prior to the 1990 amendments