60 F.3d 832
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 Yun Chow CHANG, Petitioner,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 93-70939.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted June 13, 1995.
Decided June 30, 1995.
 
 Before: GOODWIN, FARRIS and KLEINFELD, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Yun Chow Chang is a 37 year-old native and citizen of Taiwan, and lawful permanent resident of the United States. He appeals a decision of the Board of Immigration Appeals (the Board) finding him deportable to Taiwan under Section 241(a)(11) of the Immigration and Nationality Act, based on his conviction for violating "any law or regulation relating to a controlled substance." 8 U.S.C. Sec. 1251(a)(11).[1] The Board denied Chang's application for discretionary waiver of deportation pursuant to INA Section 212(c), and his motion to remand to the immigration judge (IJ) based on new evidence. We affirm.
 
 I. Section 212(c) Waiver
 
 3
 Chang argues that the Board failed to give actual consideration to several important equities supporting his request for discretionary relief. We have held that the Board must consider all the facts and circumstances of a particular case, "taking into account the social and humane considerations presented in an applicant's favor and balancing them against the adverse factors that evidence the applicant's undesirability as a permanent resident." Yepes-Prado v. I.N.S., 10 F.3d 1363, 1365-66 (9th Cir. 1993). Factors weighing in favor of granting a Section 212(C) waiver include:
 
 
 4
 1) family ties within the United States; (2) residence of long duration in this country (particularly when residence began at a young age); 3) hardship to the petitioner or petitioner's family if relief is not granted; 4) service in the United States armed forces; 5) a history of employment; 6) the existence of business or property ties; 7) evidence of value and service to the community; 8) proof of rehabilitation if a criminal record exists; 9) other evidence attesting to good character.
 
 
 5
 Id. (citing In re Edwards, Interim Decision No. 3134, 1990 WL 385757 (B.I.A. May 2, 1990)). Factors weighing against granting the waiver include:
 
 
 6
 1) the nature and underlying circumstances of the exclusion or deportation ground at issue; 2) additional violations of the immigration laws; 3) the existence, seriousness, and recency of any criminal record; 4) other evidence of bad character or the undersirability of the applicant as a permanent resident.
 
 
 7
 Id.
 
 
 8
 The Board concluded that Chang's criminal record "necessitates a showing of outstanding or unusual equities because it exhibits a pattern of serious criminal misconduct and a disregard for the laws of our society." The Board is well within its authority to require a showing of outstanding equities by applicants who have been convicted of serious drug offenses or whose record reflects a pattern of serious criminal activity. Ayala-Chavez v. U.S. I.N.S., 944 F.2d 638, 641 (9th Cir. 1991). In light of our precedents, Chang's criminal background was sufficiently "serious" to require a showing of outstanding equities. See id. at 642 (Alien whose criminal record consisted of a single conviction for cocaine possession and reflected numerous traffic offenses was properly required to show outstanding equities). We now turn to the details of Chang's argument.
 
 
 9
 1. Chang claims that the Board did not properly account for all of his positive equities. His argument is essentially a complaint that the Board failed to weigh a particular equity as Chang would have liked. For example, Chang complains that "[t]he Board paid mere lip service to the hardship [his] mother would suffer," and "[t]he Board also barely mentioned [his] military service, without giving it any real consideration." Our narrow scope of review does not permit us to substitute our discretion for the Board's. The Board's decision to grant discretionary relief pursuant to Section 212(c) involves a comparative or evaluative judgment relative to standards, and there is a subjective element in the interpretation or application of those standards.
 
 
 10
 There is a difference, and an important one, between weighing equities as a matter of discretion, which is what the Board does, and reviewing for abuse of discretion, which is what this court does. In Campos-Granillo v. I.N.S., 12 F.3d 849 (9th Cir. 1993), we clearly acknowledged our standard of review as laid out in Villanueva-Franco v. I.N.S., 802 F.2d 327 (9th Cir. 1986). Campos-Granillo, 12 F.3d at 852. Villanueva-Franco holds that "all that is necessary is a decision that sets out terms sufficient to enable us as a reviewing court to see that the Board has heard, considered, and decided." 802 F.2d at 330. Applying that narrow standard to the decision of the Board in this case, it is clear that there was no abuse of discretion.
 
 
 11
 2. Chang identifies a failure of the Board to address the factor of his value and service to his community. We have held that the Board's failure to address all relevant and applicable factors constitutes an abuse of discretion. Rashtabadi v. I.N.S., 23 F.3d 1562, 1570-71 (9th Cir. 1994). The Board is required to "issue a reasoned disposition reflecting [its] consideration" of the relevant and applicable factors, Dragon v. I.N.S., 748 F.2d 1304, 1307 (9th Cir. 1984), and this court "cannot assume that the [Board] considered factors that it failed to mention," Yepes-Prado, 10 F.3d at 1366.
 
 
 12
 Were we persuaded that Chang produced evidence probative of his "value and service to the community," we would have a reason to reverse and remand the case to the Board for further consideration of Chang's waiver application. But on this record no remand is necessary because Chang's evidence was irrelevant and inapplicable to the factor of "value and service to the community."
 
 
 13
 After spending many years in Washington State, in January 1988, six weeks before his deportation hearing, Chang moved to Chicago. There he came into contact with residents who lived in the same apartment complex as his mother. This apartment complex is the "community" to which Chang claims to have been a value and a service. When asked how Chang has served the residents of his mother's apartment complex, Chang's witnesses gave credible evidence that he exhibited such acts of kindness as assisting elderly neighbors with their groceries, opening doors for others, and, occasionally, bringing to the apartment complex vegetables that his employer could no longer market for sale and would otherwise throw in the trash.
 
 
 14
 The administrative record must contain competent evidence of a positive Edwards factor before this court will vacate a decision of the Board for failure to address it. We cannot fault the Board for failing to address what is not there. Putting to one side the question whether it is even appropriate to consider the apartment complex Chang's "community," and without denigrating Chang's acts of kindness and respect for his elders, we conclude that he offered insufficient competent evidence of "value and service to the community" to warrant remand on this record. His eleventh-hour exposure to his mother's apartment complex was short in duration, and -- even in the view of his own attorney -- did not constitute the type of value and service to the community "that generally is contemplated" by the applicable legal standard.[2]
 
 
 15
 3. Chang next argues that the Board's decision does not evidence actual consideration of the positive factors in his case. We disagree. The Board clearly demonstrated that it considered Chang's positive factors and not simply his negative ones. Chang argues that the Board must have completely ignored his positive equities because "[i]t is simply unreasonable for the Board to hold that two convictions for simple possession constitute such a serious pattern of misconduct that it would overcome even 'outstanding or unusual equities."' (Emphasis Chang's). Chang's argument is untenable in light of this court's precedents. See Ayala-Chavez, 944 F.2d at 641-42. Moreover, the Board is free to consider evidence of an alien's antisocial conduct, without conviction, insofar as the antisocial conduct is probative of an alien's "bad character or undersirability as a permanent resident." Paredes-Urrestarazu v. U.S. I.N.S., 36 F.3d 801, 810 (9th Cir. 1994). The Board may look beyond the face of Chang's plea bargains, and examine his arrest record and any other evidence that casts light on the true nature and extent of his criminality. Id.
 
 
 16
 4. Chang next protests that the Board did not offer a "specific, cogent reason" for questioning Chang's "lack of candor." See Damaize-Job v. I.N.S., 787 F.2d 1332, 1338 (9th Cir. 1986). He asks us to remand the case to permit the Board to explain why it questioned his credibility. We have no reason to put the Board to the trouble.
 
 
 17
 Damaize-Job stated that this court defers not only to express but also implied findings that sufficiently explain the Board's credibility determination to allow meaningful appellate review. See id. (After rejecting reasons offered by the IJ for disbelieving the alien, the court proceeds to examine the record for any other evidence that would support and explain the IJ's conclusion). In this case, Chang's testimony was a blanket denial of any involvement in drugs and drug trafficking (save for past occasional marijuana use). Pitted against this was powerful evidence that his denials were totally false.
 
 
 18
 Damaize-Job stands for the proposition that this court should not be placed in a position where it cannot tell why the Board concluded that the alien's testimony was unworthy of belief. Here the reason why is obvious. Either Chang was the victim of a shocking case of mistaken identity, involving repeated official errors at more than one level of government, or his testimony was a tissue of lies. The Board considered Chang's "arrest for having drugs while awaiting a determination on his pending cocaine possession charge" to be one of Chang's demerits, and it is impossible to see how this could have been considered a demerit if Chang's story that the drugs belonged to others had been believed. We conclude that the Board's reference to "Chang's lack of candor in the deportation hearing" is easily understood and amply supported by implied findings. Remand is not required.
 
 
 19
 5. Chang next argues that the Board improperly applied Edward's "rehabilitation factor." The Board mentioned rehabilitation only once: "In view of these facts and [Chang's] refusal to accept full responsibility for his drug activities, we are not convinced that he presented persuasive evidence that he was rehabilitated." Chang argues that the Board improperly approached the issue of rehabilitation in a manner that was rejected by the Board in Edwards.
 
 
 20
 Edwards explained earlier Board decisions and confirmed that a proper merit determination "can only be made after a complete review of the favorable factors in [each] case." Edwards, Int. Dec. 3134. Edwards also made clear that, while an alien with a criminal record "ordinarily" is required to demonstrate rehabilitation before relief can be granted, this did not mean that rehabilitation was an "absolute prerequisite" to relief, but one factor among others to be considered in exercising discretion. Id. See Ayala-Chavez, 944 F.2d at 641 n.3 (Edwards "merely explained Buscemi and made it clear that a full examination of an alien's equities could not be pretermitted"). Nothing in Edwards prevents the Board from continuing to place great weight on an alien's demonstration of rehabilitation. The Board in this case considered relevant factors, balanced the equities, and did not treat rehabilitation as an absolute prerequisite to relief.
 
 
 21
 6. Chang finally argues that the Board improperly weighed the evidence in finding that he was not rehabilitated. This argument is utterly without merit. Once again, Chang is asking us to substitute our judgment for the Board's. That we cannot do. See Liu v. Waters, No. 94-16262, slip op. 5215, 5226 (9th Cir. May 10, 1995). The Board was well within its discretion to look with disfavor upon Chang's arrest on drug charges while he was awaiting sentencing on his 1986 drug conviction, and his violation of probation at around the same time. Chang's testimony at his deportation hearing evidently was taken as a continuing effort to shift responsibility from Chang himself to his girlfriend and other evil companions. Chang tried to deny personal criminal conduct, and blamed what criminal conduct he could not deny on forces outside his will or character. Evidence that Chang began to turn his life around six weeks before his second deportation hearing is heartening, but does not entitle him to a finding in his favor. On this issue, the Board's opinion shows a reasoned consideration of the evidence and no abuse of discretion.
 
 II. Motion to Remand
 
 22
 Chang moved the Board to remand his case to the IJ for additional proceedings to present new evidence regarding his rehabilitation and equities. The Board stated: "[W]e will not grant a motion to remand unless it presents evidence of such a nature that it would likely change the result in the case if the proceedings were reopened." Casting a sceptical eye on evidence assembled by Chang after his initial hearing before the IJ went poorly, the Board held that the evidence did not warrant a remand as a matter of discretion.
 
 
 23
 1. Chang argues that a motion to remand may not be denied simply because the Board determines that remand would not change the result of the Section 212(c) proceedings. His argument takes three steps. First, Chang argues that motions to reopen are to be decided without regard to whether the result of the proceedings would differ if the motion were granted, and to that end he cites Saldana v. I.N.S., 762 F.2d 824, 826-27 (9th Cir. 1985). Second, Chang argues that motions to remand should be subject to the same standard as a motion to reopen. To that end he cites no authority, but authority exists. See Rodriquez v. I.N.S., 841 F.2d 865, 867 (9th Cir. 1987) ("The formal requirements of the motion to reopen and those of the motion to remand are for all practical purposes the same."). From steps one and two, Chang concludes that because the Board denied the motion to remand on the basis that the result of the proceedings would not differ if the motion were granted, the Board erred.
 
 
 24
 We reject that conclusion and hold that a perfectly appropriate reason for denying an alien's motion to remand is that remand would not likely change the result of the Section 212(c) proceedings. first step. There is no statutory provision for the reopening or remanding of a deportation proceeding, and the authority for such motions derive solely from regulations promulgated by the Attorney General. I.N.S. v. Doherty, 112 S.Ct. 719, 724 (1992). The granting either of a motion to reopen or to remand is discretionary, and the Attorney General (including its delegate, the Board) has "board discretion" to grant or deny such motions. Id. As the Supreme Court explained in I.N.S. v. Abudu, 485 U.S. 94 (1988) and again in Doherty, both cases discussing motions to reopen, "[t]here are at least three independent grounds on which the [Board] may deny a motion to reopen":
 
 
 25
 First, it may hold that the movant has not established a prima facie case for the underlying substantive relief sought .... Second, the [Board] may hold that the movant has not introduced previously unavailable, material evidence, 8 C.F.R. Sec. 3.2 (1987) .... Third, in cases in which the ultimate grant of relief is discretionary ... the [Board] may leap ahead, as it were, over the two threshold concerns (prima facie case and new evidence/reasonable explanation), and simply determine that even if they were met, the movant would not be entitled to the discretionary grant of relief. We have consistently held that denials of this third ground are subject to an abuse-of-discretion standard.
 
 
 26
 Abudu, 485 U.S. at 104-05; Doherty, 112 S.Ct. at 725. Any suggestion in older cases in this circuit that only the first two of the three concerns identified by the Supreme Court may be considered in denying a motion to reopen obviously no longer is an accurate statement of the law. See Delmundo v. I.N.S., 43 F.3d 436, 439 (9th Cir. 1994). Pari ratione, the Board is not limited to considering only the first two of the three considerations in denying a motion to remand. Rodriguez, 841 F.2d at 867.
 
 
 27
 In this case, the Board followed the dictates of Matter of Coelho, Interim Decision 3172 (BIA 1992) (Denying motion to remand). In Coelho, the Board canvassed Abudu and Doherty and concluded that "the Board ordinarily will not consider a discretionary grant of a motion to remand unless the moving party meets a 'heavy burden' and presents evidence of such a nature that the Board is satisfied that if proceedings before the immigration judge were reopened, with all the attendant delays, the new evidence offered would likely change the result in the case." Id. at 13. Coelho is a correct application of two precedent decisions of the Supreme Court, and the Board in this case quite properly applied Coelho to Chang's motion to remand. We cannot disturb the Board's denial of Chang's motion as a clear abuse of discretion.[3]
 
 
 28
 2. Chang finally argues that the Board failed to assign his new evidence sufficient weight. Again, Chang essentially requests this court to substitute its discretion for that of the Board and find as a matter of law that Chang has met his "heavy burden" of demonstrating that reopened proceedings before the IJ would lead to a different result. The Board considered all of Chang's new evidence, and concluded that his marriage to a woman who was well aware of his deportation order when she married him did not create substantial equities in his favor; the progressive character of his mother's disease was a factor that had already been taken into account by the IJ; and his additional evidence of rehabilitation, amassed after deportation proceedings had begun, was insufficient to warrant further proceedings. The Board satisfied itself that "[h]ad the information proffered by [Chang] already been part of the record on appeal, the decision on appeal would be the same." Coelho at 14. "The BIA has discretion. Its exercise of discretion is entitled to reasonable deference." Liu, slip op. at 5226.
 
 
 29
 The petition is DENIED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Now renumbered as Section 241(a)(2)(B)(i), 8 U.S.C. Sec. 1251(a)(2)(B)(i)
 
 
 [2]
 His attorney stated: "In terms of the kind of service to community [sic] that might be contemplated by that factor that's laid out in Matter of Marin, maybe he doesn't have the type that generally is contemplated but he has, he has contributed or he has helped to [sic] people who live in the apartment building where he lives, where his mother lives, rather. He has helped them in some of the ways that he has helped his mother."
 
 
 [3]
 See Abudu, 485 U.S. at 110 ("[I]NS officials must exercise especially sensitive political functions that implicate questions of foreign relations, and therefore the reasons for giving deference to agency decisions on petitions for reopening or reconsideration in other administrative contexts apply with even greater force in the INS context.") (footnote omitted)