**Jesus Jorge AYALA–CHAVEZ, Petitioner,**

v.

**U.S. IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

**No. 90–70657.**

United States Court of Appeals, Ninth Circuit.

Submitted Sept. 12, 1991.[*]

Decided Sept. 19, 1991.

---

* The panel finds this case appropriate for submission without oral argument pursuant to Ninth Circuit Rule 34–4 and Fed.R.App.P. 34(a).

Jay Warren Stansell; Sarah B. Ignatius, Northwest Immigrant Legal Services, Seattle, Wash., for petitioner.

William J. Howard, Office of Immigration Litigation, U.S. Dept. of Justice, Washington, D.C., for respondent.

Before WRIGHT, FARRIS and TROTT, Circuit Judges.

EUGENE A. WRIGHT, Circuit Judge:

Jesus Jorge Ayala–Chavez seeks review of a Board of Immigration Appeals (BIA) decision affirming the immigration judge's denial of his application for discretionary relief from deportation under section 212(c) of the Immigration and Nationality Act, 8 U.S.C. § 1182(c). We affirm.

## I

Ayala is a 27 year old Mexican citizen who has lived in the United States as a lawful permanent resident for about 18 years. He, his parents and siblings have all lived in the same area of Eastern Washington since their arrival in this country. He is divorced from a United States citizen and he has a minor daughter, also a citizen, whom he visits regularly and to whom he pays child support. He attended state public schools through the eleventh grade, but was unable to finish high school due to a head injury. He has expressed an intention to obtain a G.E.D. and has maintained steady employment as a farm worker since leaving school.

In October 1987, Ayala was convicted in Washington state court of possession of cocaine. His prior record consisted of numerous traffic violations including two incidents of negligent driving, several speeding tickets and three arrests for driving without a license for which he served 42 days in jail. He also had been declared an habitual traffic offender.

Shortly after his conviction, the INS charged him with deportability under section 241(a)(11) of the Act, 8 U.S.C. § 1251(a)(11).[1] The immigration judge found him deportable and denied his application for a waiver of deportation under section 212(c) of the Act, 8 U.S.C. § 1182(c).[2] The BIA affirmed. We have jurisdiction under 8 U.S.C. § 1105a.

## II

Ayala contends the BIA applied an erroneous legal standard by requiring him to show "outstanding equities" before a grant of section 212 relief would be considered.

■ The INS responds that this court lacks jurisdiction over the issue because

---

**1.** Section 241(a)(11) reads:
  Any alien in the United States … shall, upon order of the Attorney General, be deported who—
  11) is, or hereafter at any time after entry has been a narcotic drug addict, or who at any time has been convicted of a violation of, or conspiracy to violate, any law or regulation of a State, the United States, or a foreign country relating to a controlled substance (as defined in section 102 of the Controlled Substance Act).
  8 U.S.C. § 1251(a)(11). Ayala concedes that he is deportable under this provision.

**2.** Section 212(c) provides:

Aliens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under any order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted at the discretion of the Attorney General.

8 U.S.C. § 1182(c). On its face, this provision seems to apply only to exclusion proceedings, but we have found it applicable to deportation proceedings as well. *See Tapia–Acuna v. INS,* 640 F.2d 223, 224 (9th Cir.1981). We have also held it applicable to deportation proceedings regardless of whether the resident ever left the United States. *Id.* at 225.

Ayala did not raise it before the BIA. *See Vargas v. INS*, 831 F.2d 906, 907–08 (9th Cir.1987). We disagree. In his brief to the Board, Ayala argued, "A non-violent possessory drug offense, together with minor infractions and problems, should not by themselves require that an alien should show unusual or outstanding equities to merit relief under section 212(c)." We find this adequately raised the issue to the BIA.

█ We review de novo the legal standard applied by the BIA. *Arteaga v. INS*, 836 F.2d 1227, 1228 (9th Cir.1988). Because section 212(c) is silent on the applicable legal standard, we must determine whether the administrative agency's standard is based on a permissible reading of the statute. *See Chevron v. Natural Res. Def. Council*, 467 U.S. 837, 843, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984). "The court need not conclude that the agency construction was the only one it could permissibly have adopted ... or even the reading the court would have reached if the question had arisen in a judicial proceeding." *Id.* at 843 n. 11, 104 S.Ct. at 2782 n. 11. We show considerable deference to the BIA's interpretation of the statutes it administers. *Mahini v. INS*, 779 F.2d 1419, 1420 (9th Cir.1986).

█ The BIA requires a showing of outstanding equities by applicants for discretionary relief who have been convicted of serious drug offenses, particularly trafficking. *See Matter of Marin*, 16 I. & N. Dec. 581, 586 n. 4 (1978). Outstanding equities must also be demonstrated where the applicant's record reflects a pattern of serious criminal activity. *Matter of Buscemi*, Interim Decision 3058 (BIA 1984).[3] Other circuits have recognized such a heightened standard but have not considered the precise argument made here. *See, e.g., Blackwood v. INS*, 803 F.2d 1165, 1168 (11th Cir.1988); *Mantell v. INS*, 798 F.2d 124, 126 (5th Cir.1986).

In determining whether the BIA's construction of the statute was permissible, we first note that courts have always interpreted broadly the discretionary authority of the Attorney General to grant or deny waiver of deportation. *E.g., Jay v. Boyd*, 351 U.S. 345, 353–54, 76 S.Ct. 919, 924, 100 L.Ed. 1242 (1956) (interpreting the then-current statute allowing suspension of deportation as giving the Attorney General "unfettered discretion"). Inherent in this discretion is the authority of the Attorney General and his subordinates to establish general standards that govern the exercise of such discretion, as long as these standards are rationally related to the statutory scheme. *See* C. Gordon, H. Rosenfield, S. Mailman, 3 *Immigration Law and Procedure* § 8.15a at 8–128 & n. 13.

The outstanding equities standard is rationally related to the statutory scheme. We agree with the Eleventh Circuit that "the immigration laws clearly reflect strong Congressional policy against lenient treatment of drug offenders." *Blackwood v. INS*, 803 F.2d 1165, 1167 (11th Cir.1988); *cf. Mason v. Brooks*, 862 F.2d 190, 194–95 (9th Cir.1988) ("Congress has forcefully expressed our national policy against persons who possess controlled substances by enacting laws ... to exclude them from the United States if they are aliens.") The Act itself distinguishes between drug offenders and persons convicted of other crimes. *See, e.g.,* 8 U.S.C. § 1251(b) (judicial recommendations against deportation are not permitted in the case of aliens convicted of narcotics violations).

The BIA's application of a higher standard for drug offenders is rationally based upon the Act's manifest concern with drug activity by lawful permanent residents. The higher standard represents a permissible interpretation of the Act.

### III

█ Ayala contends that, even if the outstanding equities standard is generally val-

---

**3.** Ayala argues that *Buscemi's* outstanding equities standard was overruled by *Matter of Edwards*, Interim Decision 3134 (BIA 1990). Such a reading of *Edwards* is not justified. The *Edwards* decision merely explained *Buscemi* and

made it clear that a full examination of an alien's equities could not be pretermitted. *Edwards*, Interim Decision 3134 at 7, n. 3. We find no such pretermission here.

id, the BIA erred by applying it to his case. He argues that the BIA did not state clearly its rationale for imposing the higher standard. This argument is meritless. The BIA clearly stated that "[Ayala's] drug conviction and the earlier lesser offenses are negative factors which ... compel a heightened showing of outstanding equities." Clearly there may be circumstances in which a petitioner's criminal activity is of such a slight nature that application of the higher standard would not be supported by substantial evidence. Ayala's criminal record is serious enough to justify application of the higher standard.

▮ Ayala further argues that the BIA failed to evaluate the gravity of his criminal offenses and erred in its factual finding that his record showed a pattern of criminal activity. The Board adequately evaluated the gravity of his offenses by enumerating each and concluding that his convictions weighed heavily against him. The Board's factual determination that Ayala's record showed a pattern of criminal activity was amply supported by substantial evidence.

The BIA acknowledged that rehabilitation is an important factor for determining relief, but is not an absolute prerequisite for a waiver to issue. *Matter of Buscemi*, Interim Decision 3058 (BIA 1988). It noted that Ayala's repeated convictions for driving offenses and his eventual drug conviction showed disregard for the laws of the United States. It concluded that he did not learn from the less serious convictions and that evidence he served his jail term and was paying off his fine was insufficient to show rehabilitation. This conclusion was reasonable.

### IV

▮ We review the BIA's balancing of the equities for section 212(c) relief for an abuse of discretion. *Vargas v. Dep't of Immigration and Naturalization*, 831 F.2d 906, 908 (9th Cir.1987). We may set aside the BIA's denial of section 212(c) relief "only if the Board failed to support its conclusions with a reasoned explanation based upon legitimate concerns." *Id.*

▮ In Ayala's favor, the BIA considered his 18–year residence in this country, commencing at age nine.[4] Also considered was the fact that most of his family resides legally in Eastern Washington and that many of them testified on his behalf at the hearing before the immigration judge. He has three sisters who are citizens, and one sister and brother who are legal permanent residents. Ayala's support of his minor daughter was also considered in the BIA proceedings.

The BIA weighed all of these factors and found the equities in Ayala's favor to be substantial, but not outstanding. Accordingly, the BIA dismissed his application for a waiver of deportation. In light of our narrow standard of review, we cannot say that the BIA abused its discretion.

AFFIRMED.

---

4. Ayala contends that he actually arrived in the United States about 1967 at the age of four, but reentered the country legally in 1972 at age nine. The record is not clear on the actual date of entry. The discrepancy is not dispositive, however, because either date establishes long term residence that is a favorable factor for consideration.