**Philip Jesse CHARLESWORTH,**
**Petitioner,**

v.

**UNITED STATES IMMIGRATION AND NATURALIZATION SERVICE,**
**Respondent.**

No. 91–70298.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 7, 1992.

Decided June 12, 1992.

William B. Bennett, Manulkin, Glaser & Bennett, Fountain Valley, Cal., for petitioner.

William J. Howard, Office of Immigration Litigation, Washington, D.C., for respondent.

Before: BROWNING and FARRIS, Circuit Judges, and MacBRIDE,* District Judge.

FARRIS, Circuit Judge:

Philip Charlesworth petitions for review of the Board of Immigration Appeals' conclusion that he is not entitled to a discretionary waiver of deportation under section 212(c) of the Immigration and Nationality Act of 1952, as amended, 8 U.S.C. § 1182(c). He argues that the Board: (1) abused its discretion in reversing the immigration judge's grant of section 212(c) relief and (2) violated his due process rights by reopening the deportation proceedings *sua sponte* and supplementing the record with a letter from Judith Charlesworth. We have jurisdiction pursuant to section 106(a) of the Immigration Act, 8 U.S.C. § 1105a(a). We affirm.

FACTS

Philip Charlesworth, a native and citizen of Great Britain, entered the United States on August 24, 1973. Charlesworth was nineteen or twenty years old at the time. On April 9, 1976, he married a U.S. citizen whom he had been living with since 1973, and, on September 27, 1977, his status was adjusted to lawful permanent resident.

Approximately two years later, Charlesworth decided to move to Hawaii in order to earn a living restoring automobiles. At the time, his wife, Judith Charlesworth, was gainfully employed in San Francisco and decided to remain in her present em-

---

* Honorable Thomas J. MacBride, Senior Judge for the Eastern District of California, sitting by designation.

ployment. By living apart, Philip and Judith hoped to earn enough money to buy a house and raise a family.

In 1982, Hawaii charged Charlesworth with three counts of promoting a dangerous drug in the first degree. Pursuant to a January 5, 1984, plea agreement, the charges were reduced to one count of promoting a dangerous drug (LSD) in the first degree and two counts of possession (LSD and cocaine) in the second degree. Charlesworth was sentenced to twenty years on the first-degree conviction and ten years, to run concurrently, on each of the second-degree convictions.

The INS initiated deportation proceedings on April 2, 1984. Charlesworth conceded his deportability, but argued that he merited a section 212(c) discretionary waiver of deportation. On December 14, 1984, an immigration judge found that Charlesworth's positive factors, most notably his marriage to an American citizen, sufficiently offset his negative factors, most notably his drug convictions, and granted his request for relief.

On December 18, 1984, the INS appealed the immigration judge's ruling to the Board of Immigration Appeals. The INS filed its brief on October 14, 1986, apparently after receiving a September 23, 1986, letter from Judith Charlesworth that indicated that Philip was now her ex-husband. The INS argued that the immigration judge underestimated the significance of Charlesworth's drug convictions and overestimated the hardship that deportation would cause to Judith Charlesworth.

Charlesworth filed his opposition brief on January 12, 1987. In the brief, he acknowledged Judith Charlesworth's letter, but asserted that it "is speculative at best and should have no effect as to the status of their marriage until legally terminated." On February 25, 1991, the Board sustained the INS' appeal. We stayed Charlesworth's arrest and deportation pending this appeal.

1. *Discretionary waiver of deportation*

■ The unusual or outstanding equities test that the Board routinely applies to drug offenders does not violate the Equal Protection Clause. The general rule is that a classification need only be "rationally related to a legitimate [governmental] interest." *Cleburne v. Cleburne Living Center, Inc.,* 473 U.S. 432, 440, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985). In *Ayala-Chavez v. INS,* 944 F.2d 638, 641 (9th Cir. 1991), we held that "[t]he [Board's] application of a higher standard for drug offenders is rationally based upon the Act's manifest concern with drug activity by lawful permanent residents. The higher standard represents a permissible interpretation of the Act." Charlesworth's equal protection argument fails.

■ The Board is not required to defer to the immigration judge's findings and conclusions. Charlesworth's argument that the Board failed to do so miscomprehends the Board's role in immigration proceedings: "the [Board] has the power to conduct a de novo review of the record, to make its own findings, and independently to determine the legal sufficiency of the evidence." *Elnager v. INS,* 930 F.2d 784, 787 (9th Cir.1991). For this same reason, our review is limited to the Board's decision. *See id.*

■ The Board adequately supported its decision with a reasoned explanation based upon legitimate concerns. *See Vargas v. INS,* 831 F.2d 906, 908 (9th Cir.1987). Charlesworth has no family ties in the United States. He moved to the United States in 1973 at the age of nineteen or twenty. Judith Charlesworth is employed and accustomed to living on her own. Philip Charlesworth has not served in the United States armed forces. Although he purportedly has an offer of employment upon his release from prison, he was not employed at the time of the Board's decision and has no significant property or business ties in the United States. His community service, good character, and rehabilitation support his request for section 212(c) relief, but the Board did not abuse its discretion. *See Ayala-Chavez,* 944 F.2d at 642.

■ Charlesworth nevertheless argues that the Board erred in failing to: (1) desig-

nate a country of deportation and (2) remand his case for application of the unusual or outstanding equities standard by the immigration judge. Both arguments are without merit. The Board's decision indicates that "the record is devoid of evidence that the respondent would be unable to provide for himself if he must return to *Great Britain.*" (Emphasis added.) And, in *Elnager*, 930 F.2d at 787, we held that "[a]ny requirement that the [Board] remand a case in which the immigration judge has applied the wrong legal standard would strip the [Board] of the discretion that [8 C.F.R. § 3.1(d)] provides." The Board has the discretionary power to remand a case, but cannot be required to do so. *See id.*

### 2. *Judith Charlesworth's letter*

We have jurisdiction to consider Charlesworth's due process argument. In *El Rescate Legal Servs., Inc. v. Executive Office of Immigration Review*, 959 F.2d 742, 746 (9th Cir.1992), we held that Section 106(c) of the Immigration Act, 8 U.S.C. 1105a(c), does not preclude "jurisdiction to rule on an alleged pattern and practice of constitutional or statutory violations." Charlesworth challenges the Board's general practice of not notifying parties prior to reopening deportation proceedings. We can address this argument under *El Rescate.*

■ Charlesworth's due process argument fails. In *Elnager*, 930 F.2d at 788, Elnager argued that the Board should give notice when it reviews a case *de novo*. We held that "Elnager was clearly on constructive notice as to the [Board's] power to conduct a de novo review." *Id.* Charlesworth similarly had notice that Judith Charlesworth's letter had been submitted to the Board and that "[t]he Board may on its own motion reopen or reconsider any case in which it has rendered a decision." 8 C.F.R. § 3.2. Section 3.2 does not require notice or extraordinary circumstances. Although section 3.2 suggests that the Board must render a decision before it may reopen a case, no purpose is served by requiring the Board to render a

decision solely to enable it to reopen the proceedings and supersede that decision.

■ In any event, Charlesworth has not established that he was prejudiced by the Board's procedure. In his opposition brief, Charlesworth argued that Judith Charlesworth's letter "should have no effect as to the status of their marriage until legally terminated." He did not argue, nor could he have argued, that the marriage was not effectively terminated. The Board thus referred to the letter as underscoring rather than controlling their decision. Philip and Judith Charlesworth were accustomed to living apart. The burden that Philip Charlesworth faced is amply demonstrated by *Ayala–Chavez*, 944 F.2d at 642. The Board could properly sustain the INS' appeal.

AFFIRMED.