9 F.3d 1551
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Arturo IBARRA-GARCIA, Plaintiff-Appellant,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Defendant-Appellee.
 No. 92-70369.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Oct. 6, 1993.
Decided Nov. 9, 1993.
 
 1
 Before: REINHARDT and T.G. NELSON, Circuit Judges, and KAUFMAN,* District Judge.
 
 
 2
 MEMORANDUM**
 
 I. Background
 
 3
 Arturo Ibarra-Garcia, a native and citizen of Mexico, petitions for review of the Board of Immigration Appeals' order affirming an Immigration Judge's decision to deport him pursuant to Section 241(a)(2)(B)(i) (" § 241(a)") of the Immigration and Naturalization Act ("Act"), 8 U.S.C. § 1251(a)(2)(B)(i), based on his 1991 conviction for the use of cocaine. Ibarra-Garcia admits that he is deportable under the Act, but contends that the Immigration Judge ("IJ") and the Board of Immigration Appeals ("BIA") improperly denied his application for waiver of deportation pursuant to Section 212(c) of the Act (" § 212(c)"), 8 U.S.C. § 1182(c).
 
 
 4
 We affirm the BIA's decision. The BIA has supported its denial of waiver of deportation with "a reasoned explanation based on legitimate concerns," as required under Ayala-Chavez v. INS, 944 F.2d 638, 641 (9th Cir.1991). As a result, the BIA's decision must be accorded substantial deference and should only be overturned for abuse of discretion. Id. at 642. Ibarra-Garcia has offered no evidence indicative of an abuse of discretion.
 
 II. Standard of Review
 
 5
 Section 212(c) of the Act vests the Attorney General, and derivatively the BIA, with discretionary authority to grant or deny waivers of deportation. We may set aside the BIA's decision to extend or withhold relief under § 212(c) only if the Board abused its discretion.
 
 III. Analysis
 
 6
 In its per curiam order, the BIA indicated that it had reviewed the record, the IJ's decision, and Ibarra-Garcia's contentions on appeal. The BIA found that the IJ "adequately and correctly addressed the issues raised on appeal" and affirmed the IJ's decision based on the reasoning set out in his oral opinion. It is clear that the BIA expressly incorporated by reference the IJ's reasoning. This Memorandum will therefore focus on the IJ's reasoning in his opinion.
 
 
 7
 An application for discretionary relief under § 212(c) "necessitates a balancing of the adverse factors of record evidencing an alien's undesirability as a permanent resident with the social and humane considerations presented in his behalf" to determine whether waiver of deportation is in the best interest of the U.S. Matter of Marin, 16 I & N Dec. 581, 584 (BIA 1978). An applicant for § 212(c) waiver carries the burden of establishing his or her eligibility for discretionary relief. Id. at 583. The equities that an applicant for § 212(c) relief must bring forward to elicit favorable discretionary action "will depend in each case on the nature and circumstances of the ground of exclusion sought waived and on the presence of any additional adverse factors." Id. at 585. However, because "the immigration laws reflect strong Congressional policy against lenient treatment of drug offenders," Ayala-Chavez, 944 F.2d at 641, we have stated that a single serious drug-related crime or a lengthy history of criminal conduct may require the alien to demonstrate "unusual or outstanding equities." See id. See also Matter of Buscemi, 19 I & N Dec. 628 (BIA 1988). Even then, those equities must outweigh the negative factors. Given Ibarra-Garcia's extensive criminal history, which includes several drug-related offenses, the IJ properly held Ibarra-Garcia to this more exacting standard. See Ayala-Chavez, 944 F.2d at 640, 642 (defendant properly held to "unusual or outstanding equities" standard based on his conviction for possession of cocaine and numerous traffic violations).
 
 
 8
 Among the factors deemed adverse to an applicant requesting waiver have been the nature and underlying circumstances of the deportation ground at issue, the presence of additional significant violations of the country's immigration laws, the existence of a criminal record (and its nature, recency and seriousness), and the presence of other information indicative of an applicant's bad character or undesirability as a permanent U.S. resident. See id. at 584. Favorable considerations include such factors as family ties within the U.S., lawful U.S. residence of long duration (particularly if the applicant was young when U.S. residence began), evidence of hardship to the applicant and his or her family if deportation occurs, service in the U.S. Armed Forces, a history of employment, the existence of property or business ties, evidence of value and service to the community, proof of genuine rehabilitation if a criminal record exists, and other evidence attesting to an applicant's good character (e.g., affidavits from family, friends, and responsible community representatives). See id. at 585.
 
 
 9
 Ibarra-Garcia was entitled to have the IJ consider these factors by "evaluat[ing] all of them, assigning weight or importance to each one separately and then to all of them cumulatively." Matter of Edwards, Interim Decision 3134 at 13 (BIA 1991). The IJ was then required to set out a basis for his decision more substantial than "[m]ere conclusory statements," one that sets out terms sufficient to enable a reviewing court to see that Ibarra-Garcia's claims had been "heard, considered, and decided." Villanueva-Franco v. INS, 802 F.2d 327, 330 (9th Cir.1986).
 
 
 10
 The IJ followed this procedure. On the positive side, the IJ noted Ibarra-Garcia's family ties, his skilled trade, his long residency period, his contribution toward the support of his children, and his young age at entry. On the basis of this testimony, the IJ determined that Ibarra-Garcia had shown outstanding equities.
 
 
 11
 On the negative side, the IJ focused on Ibarra-Garcia's criminal history and lengthy period of drug use,[1] the absence of proven hardship should deportation be ordered,[2] and his lack of credibility regarding rehabilitation.[3] After weighing these factors, the IJ determined that § 212(c) relief was not warranted. The IJ explained his reasons for denying relief. He stated that Ibarra-Garcia's inconsistent and evasive testimony regarding his conviction for taking a motor vehicle without owner's consent created serious questions about his credibility. This lack of credibility, coupled with other factors, cast doubt on his assertions that he would have no further contact with drugs. The IJ stated that when combined with Ibarra-Garcia's record of constant criminal violations (including a failure to answer a warrant and a probation violation), his lack of credibility and the chances of further drug incidents outweighed his positive equities. On the basis of this explanation, the IJ denied discretionary relief. We cannot say that in doing so he abused his discretion. Accordingly, the BIA's order upholding the IJ's denial of Ibarra-Garcia's application for § 212(c) relief is AFFIRMED.
 
 
 
 *
 Honorable Frank A. Kaufman, United States District Judge for the District of Maryland, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 The IJ indicated that he believed in Ibarra-Garcia's determination, since October, 1990, to stop using drugs. He determined, however, that because Ibarra-Garcia had been out of custody for only three months subsequent to his decision to go straight, insufficient time had passed to determine whether Ibarra-Garcia would carry through on his intentions
 
 
 [2]
 Because of Ibarra-Garcia's skilled trade and Tijuana's proximity to Chula Vista, CA, the IJ concluded that Ibarra-Garcia would be able to continue to work, support and see his relatives after deportation to Mexico
 
 
 [3]
 The IJ questioned Ibarra-Garcia's prospects for rehabilitation in part because of inconsistencies in his testimony regarding his 1991 conviction for taking a motor vehicle without owner's consent. Ibarra-Garcia initially testified that the vehicle was loaned to him by a friend, and that he pleaded guilty to the charge because he "couldn't tell the judge that a friend had loaned it to me.... [t]hey had already apprehended me with a stolen car." When confronted with his signed guilty plea and asked why he had pleaded guilty if he had not stolen the car, Ibarra-Garcia answered "I don't know."
 In his brief, Ibarra-Garcia contends at length that the IJ improperly questioned his credibility because of his "People v. West " guilty plea in the 1991 conviction for unlawful taking of a motor vehicle without owner's consent. In People v. West, 477 P.2d 409, 3 Cal.3d 595 (1970), the California Supreme Court allowed legal recognition of plea bargains based on a plea of nolo contendere; i.e., plea bargains made without the pleader personally admitting guilt, but rather stipulating to the Government's facts. Ibarra-Garcia argues that the IJ improperly questioned his credibility because he did not admit during the deportation hearing that which he had not admitted to in his People v. West plea. But the IJ questioned Ibarra-Garcia's credibility not on the basis of his plea of nolo contendere, but because of the inconsistent and evasive testimony he offered on his role in the underlying crime: "I am not satisfied," the IJ explained, "that I have any reasonable explanation of the circumstances ... of the taking of the vehicle ...; how it happened, why it happened, and what his part was in it."