62 F.3d 1425
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Rolando RODRIGUEZ-GONZALEZ, Petitioner,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 93-71032.
 United States Court of Appeals, Ninth Circuit.
 Submitted June 8, 1995.*
Decided July 28, 1995.
 
 Before: FLETCHER, WIGGINS and FERNANDEZ, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Petitioner Rolando Rodriguez-Gonzalez seeks review of the Board of Immigration Appeal's ("BIA") final order of deportation and subsequent order denying Gonzalez's application for a waiver of deportation under section 212(c) of the Immigration and Nationality Act ("INA"). Rodriguez argues that the BIA abused its discretion by denying his section 212(c) waiver application. Rodriguez also challenges the Immigration Judge's ("IJ") finding that Rodriguez was probably under the influence of an opiate during the waiver hearing. We have jurisdiction under 8 U.S.C. Sec.1105(a) and deny the petition for review.
 
 FACTS
 
 3
 Rodriguez is a 31-year-old native and citizen of Mexico. In 1980, after residing in the United States for the previous seven years, he was admitted as a permanent resident. During this time, he has lived with his parents and four of his five siblings. Except for one sibling who is a naturalized citizen, his family members are lawful permanent residents.
 
 
 4
 In 1986, Rodriguez was convicted of petty theft and served 10 days in jail. In 1988, Rodriguez was convicted of petty theft for a second time and of being under the influence of morphine, heroin, codeine, and cocaine. In 1989, he was convicted of attempted assault and attempted auto theft. Rodriguez received concurrent six-month jail terms for his 1988 and 1989 convictions.
 
 
 5
 On November 14, 1989, the I.N.S. ordered Rodriguez to show cause why he should not be deported for his convictions pursuant to 8 U.S.C. Sec. 1251(a)(4) for committing a crime of moral turpitude and 8 U.S.C. Sec. 1251(a)(11) for committing a narcotics-related crime. Rodriguez conceded deportability and asked for waiver under section 212(c) of the INA, 8 U.S.C. Sec. 1182(c). On September 27, 1990, Rodriguez failed to appear at his first hearing because he was in jail on a charge of possession of a controlled substance. The hearing was rescheduled for May 9, 1991. At that time, the IJ denied his application for waiver, finding that the equities in Rodriguez' favor -- his family ties and long residency in the United States -- were outweighed by the increasing severity of his crimes, the scant evidence of stable employment, and his continuing drug abuse problems. Rodriguez appealed to the BIA, which affirmed the decision of the IJ. Rodriguez filed a timely petition for review before this court.
 
 STANDARDS OF REVIEW
 
 6
 The BIA's balancing of the equities is reviewed for an abuse of discretion. Ayala-Chavez v. I.N.S., 944 F.2d 638, 642 (9th Cir. 1991) (citing Vargas v. I.N.S., 831 F.2d 906, 908 (9th Cir. 1987)). The BIA's denial of section 212(c) relief may be set aside "only if the Board failed to support its conclusion with a reasoned explanation based on legitimate concerns." Id. (citing Vargas, 944 F.2d at 642).
 
 
 7
 "We review agency fact-finding to see if it is supported by substantial evidence...." Yepes-Prado v. I.N.S., 10 F.3d 1363, 1366 (9th Cir. 1993) (citing Martinez v. I.N.S., 970 F.2d 973, 974 (1st Cir. 1992)).
 
 DISCUSSION
 I. Denial of section 212(c) application
 
 8
 Rodriguez first argues that the BIA abused its discretion by denying his application for section 212(c) waiver. Rodriguez maintains that the BIA did not properly balance the following positive factors: his strong family ties in the United States; his residency of long duration; hardship to himself and his family in the event of deportation; his history of employment; proof of genuine rehabilitation since his last conviction; and his good moral character. We conclude that this claim lacks merit.
 
 
 9
 Section 212(c) authorizes the Attorney General and her agents to grant discretionary relief to aliens who are legal permanent residents and meet a seven-year residency requirement. Elramly v. I.N.S., 49 F.3d 535, 536 (9th Cir. 1995) (citing Yepes-Prado v. I.N.S., 10 F.3d 1363, 1365 (9th Cir. 1993)); 8 U.S.C. Sec. 1182(c). In exercising its discretion, "the BIA must balance the social and humane factors favorable to [the respondent] against the adverse factors that show his undesirability as a permanent resident." Elramly, 49 F.3d at 536 (citing Yepes-Prado, 10 F.3d at 1365-66 (describing such factors in detail)).
 
 
 10
 Contrary to Rodriguez's contention, the BIA did properly account for his positive equities. The BIA recognized that Rodriguez had strong family ties in the United States, spent a considerable part of his life in the United States, and that his family would be traumatized if he were deported to Mexico. However, other factors weigh strongly against a finding that Rodriguez would be desirable as a long-term permanent resident.
 
 
 11
 First, although Rodriguez had not committed a single egregious crime, the IJ found that his four separate convictions of increasing seriousness were sufficient to constitute a serious adverse factor. See Matter of Buscemi, I. & N. Dec. 3058 (BIA 1988).[1] The BIA agreed with the IJ and found a pattern of "recidivist behavior."
 
 
 12
 Second, the BIA concluded that Rodriguez had not been rehabilitated from his narcotics addiction. The evidence supports this conclusion. To begin, Rodriguez had been previously convicted of being under the influence of heroin, cocaine, codeine, and morphine, and Rodriguez admits that he has had a drug problem for much of his adult life. During this time he lived at home with his parents. His mother admits that Rodriguez has a drug problem, and his father testified that, "It seems like he has [a drug problem] but I'm not sure." Although Rodriguez participated in a methadone program for about six weeks, he failed to complete it, claiming that he ran short of cash. Rodriguez asserted that he did not have problems with marijuana or alcohol anymore and that he was trying to enroll in another methadone program. During the hearing Rodriguez appeared to be under the heavy influence of some drug, which he claimed was codeine prescribed for his broken fingers.[2]
 
 
 13
 Third, the evidence concerning Rodriguez's employment was scant and somewhat contradictory. In his section 212 application, Rodriguez stated that his only employment in the prior seven years was one year when he worked for his father's electric motor repair business. However, at the hearing both Rodriguez and his father testified that Rodriguez had worked part-time during the previous three years for the father's business. His father said: "I pay him if he works three or four days and sometimes even when he works on Saturdays and Sundays." At the hearing, Rodriguez also claimed to have worked as a dishwasher, car washer, cook, and for a car dealership. However, Rodriguez presented no evidence that he had paid taxes on any of this income.
 
 
 14
 Finally, there was no evidence that Rodriguez engaged in community service or that he had manifested good moral character by some other means.
 
 
 15
 In sum, the evidence supports the agency's determination that Rodriguez had been convicted of four crimes which were of increasing severity, had a history of drug use through much of his adult life, failed to complete a drug rehabilitation program, and offered little evidence of stable employment. Accordingly, we conclude that the BIA provided a reasoned explanation based on legitimate concerns when it denied Rodriguez's section 212(c) application.
 
 
 16
 II. Substantial evidence supports finding of Immigration Judge
 
 
 17
 Rodriguez next challenges the IJ's determination that it is "likely that the respondent is under the influence of an opiate." According to Rodriguez, this statement indicates "the overall prejudice of the IJ [and] that he abused his discretion by not properly weighing the real positive factors against the real negative factors." We conclude that this claim lacks merit.
 
 
 18
 At the waiver hearing, Rodriguez had considerable difficulty staying awake. The hearing started late because Rodriguez had fallen asleep outside the courtroom. Rodriguez's counsel told the IJ that Rodriguez could not stay awake because he was taking pain medication for a broken hand. His hand was bandaged. His counsel also stated that Rodriguez complained of a lack of concentration and expressed an unwillingness to go forward with the hearing. The IJ questioned Rodriguez about this, and Rodriguez responded that he had taken two pain killers at 2:00 am and had been given a shot the day before for two broken fingers. He said that he was sleepy and could not concentrate. At first, Rodriguez said that he did not know what kind of pills he had taken. The IJ asked for a copy of his prescription; Rodriguez said that he had "some papers" at home in his wallet. The IJ asked whether he was on any other drugs; he said "no."
 
 
 19
 The IJ asked if he would be okay if the hearing were continued to 3 o'clock that afternoon; Rodriguez said he would probably be all right by then. In the interim, at the suggestion of Rodriguez's counsel, the IJ proceeded with his parents' testimony. After Rodriguez continued to fall asleep in the courtroom, the IJ directed Rodriguez to move his chair next to his lawyer's so that his lawyer could nudge him awake when he nodded off. In addition, the IJ directed Rodriguez's counsel by the afternoon to provide some proof that Rodriguez had a prescription for medication.
 
 
 20
 [T]his afternoon when we do resume I would like some indication of his prescription that he's currently on, and if possible a statement from his attending physician as of the ... effect that, that medication has on him. And if we can't get that in writing hopefully we'll get a phone number and get a chat with him this afternoon. [A]nd Mr. Siddell, I'd like you to try to make those arrangements with his attending physician and to instruct him to bring in a prescription that shows the kind of medicine that he's on.
 
 
 21
 Instead of waiting until the afternoon, Rodriguez washed his face with cold water and chose to testify after his parents finished. At the close of Rodriguez's testimony, the IJ asked if Rodriguez would fail a test for heroin, and Rodriguez said he would.
 
 
 22
 Q. You would fail the test? You're indicating yes. Why would you fail the test?
 
 
 23
 A. Because I'm not on heroin[.] I'm on codeine.
 
 
 24
 The IJ then reviewed the evidence in support of his application and rendered a decision. The IJ was concerned about the lack of drug rehabilitation and made the following comments:
 
 
 25
 [T]his respondent has not shown any evidence of turning his life around. And indeed, he appears in Court this morning apparently under the influence of some drug. He maintains that it's a prescription drug pain killer. However, if it is a prescription drug it's at such a high dosage that the respondent can't keep his eyes open for three consecutive minutes. It seems more likely that the respondent is under the influence of an opiate. He maintains that he is on a prescription drug but that he doesn't know the name of the drug. Then he started to testify and he maintained that he thinks it's codeine of some sort. However, the respondent has declined an offer to present any evidence as to the kind of medication that he might be on, and the Court had also given him an opportunity to contact his attending physician to offer a statement that he could not stay awake and that the medication that he's on impairs his ability to function. (emphasis added).
 
 
 26
 The evidence here provides a substantial basis for the IJ's comments. Strictly speaking, the defendant himself admitted to being under the influence of an opiate -- codeine. See Webster's New Collegiate Dictionary 217 (1977) (defining "codeine" as "a morphine derivative ... that is found in opium.") (emphasis added). Furthermore, given the great difficulty Rodriguez had staying awake, his history of drug abuse, including codeine, and his inability to provide any proof that the codeine had been prescribed despite being given an opportunity to obtain such proof, there was substantial basis for the IJ to conclude that Rodriguez had either exceeded a proper dosage of a prescribed drug or was under the influence of an illicit drug.
 
 
 27
 PETITION DENIED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed. R. App. P. 34(a) and Ninth Circuit Rule 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Neither the IJ nor the BIA stated explicitly that Rodriguez would be required to demonstrate "unusual or outstanding" equities to overcome this serious adverse factor, although that is the standard applied by the BIA "where the applicant's record reflects a pattern of serious criminal activity." Ayala-Chavez, 944 F.2d at 641 (internal citation omitted). On appeal to this court, Rodriguez argues that the IJ and BIA erred by holding him to the outstanding equities standard. However, this claim is not properly before this court because Rodriguez did not raise it before the BIA. See Tejeda-Mata v. I.N.S., 626 F.2d 721, 727 (9th Cir. 1980) ("[I]f a petitioner wishes to preserve an issue for appeal, he must first raise it in the proper administrative forum."), cert. denied, 456 U.S. 994 (1982)
 
 
 [2]
 See next section for a more detailed discussion of Rodriguez's behavior during the hearing