107 F.3d 15
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Leonel CONTRERAS-TARANGO, Petitioner,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 95-70424.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Oct. 9, 1996.
Decided Jan. 31, 1997.
 
 Before: BRUNETTI, TROTT and THOMAS, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 OVERVIEW
 
 2
 Petitioner Contreras-Tarango ("Contreras") appeals from the Board of Immigration Appeal's ("BIA") refusal to grant a waiver of inadmissibility pursuant to Section 212(c) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(c). We deny the Petition for Review.
 
 COURSE OF PROCEEDINGS AND FACTS
 
 3
 Contreras is a native of Mexico who entered the United States on March 30, 1963. On February 20, 1986, Contreras was convicted of being under the influence of a controlled substance, phencyclidine. An Order to Show Cause ("OSC") was issued against Contreras charging that he was deportable under Section 241(a)(11) of the INA, 8 U.S.C. § 1251(a)(11), due to his controlled substance conviction. Contreras admitted that he was handed the OSC on October 6, 1990, but continued to commit criminal acts.
 
 
 4
 During the period from 1991 to 1994, Contreras's deportation hearing had to be postponed numerous times due to the fact that Contreras was arrested and imprisoned for crimes such as petty theft to support his heroin addiction and resisting arrest. Contreras was released from prison in January of 1994.
 
 
 5
 Contreras conceded deportability under Section 241(a)(11) of the INA, 8 U.S.C. § 1251(a)(11), on the basis of controlled substance conviction and applied for a Section 212(c) waiver of inadmissibility. After a hearing in October of 1994, the Immigration Judge ("IJ") denied Contreras's request. Contreras appealed, and the BIA affirmed. Contreras filed a petition for review with this court.
 
 
 6
 At the time of the IJ's decision, Contreras was thirty-five years old and had lawfully resided in the United States as an immigrant and citizen of Mexico for thirty-one years. Contreras is married to a United States citizen and has two children who are United States citizens. Contreras's parents, brother and two sisters are United States citizens. Contreras's grandparents reside in Mexico. Contreras can read and speak Spanish.
 
 
 7
 Contreras dropped out of school in the eleventh grade to join the U.S. Army. After five months he requested an honorable discharge. He was then employed intermittently as a construction worker and as a shipyard worker. He later became a barber.
 
 
 8
 Prior to 1979, Contreras used alcohol and marijuana. After 1979, he used heroin from time to time. Contreras admitted to using heroin daily by injection during one period. Contreras recalled that he was free of drugs only while serving time, and that once released he would drift back into heroin use. Contreras testified that he stopped using heroin about two or three years prior to the waiver of inadmissibility hearing.
 
 
 9
 In the October 1994 hearing, Contreras testified regarding his extensive record of criminal conduct in the United States. By the age of eighteen or nineteen, he had been convicted of driving under the influence of alcohol on several occasions. In 1979, Contreras was convicted of assault with a deadly weapon. In 1982, Contreras was charged, but not convicted, of assault to commit rape. In 1986, Contreras was convicted of being under the influence of phencyclidine, a controlled substance. In 1988 or 1989, he served ten months in prison for felony drunk driving. Contreras was convicted of petty theft on at least two occasions, and he served thirteen months in prison for his 1991 conviction. Contreras was convicted and imprisoned several times for parole violations between 1989 and 1992. In 1993, Contreras was convicted for resisting arrest and sentenced to sixteen months in prison.
 
 
 10
 Contreras was imprisoned for resisting arrest until January of 1994. He testified at the October 1994 hearing that he has been trying to reform himself since his release. Contreras is now employed as a barber, and does not associate with his old companions with whom he took drugs. Contreras testified that he is remorseful and wants to be a good example for his sons. Contreras testified that he had not tested positive for drug use since his release from prison in January of 1994.
 
 
 11
 Contreras admitted that he only attended a "couple of" Narcotics Anonymous meetings while he was in prison. After his release from prison in January of 1994, Contreras attended Narcotics Anonymous meetings for about two months. Contreras did not attend for a longer period of time because he was working at his uncle's barber shop. Although Contreras had been on parole for ten months, he did not submit a letter from his parole officer in support of his progress. Contreras admitted receiving the OSC in 1990 and understood that the INS wanted to deport him due to his 1986 drug conviction. Nonetheless, Contreras engaged in additional misconduct from 1991 to 1993.
 
 
 12
 In addition to Contreras's testimony, both his wife and his father testified on his behalf, stating that they felt that Contreras had truly reformed since his 1994 release from prison. Mrs. Contreras testified that if Contreras is deported, her son will be without a father, and she will suffer financial hardship.
 
 JURISDICTION
 
 13
 The Immigration and Naturalization Service ("INS") argues that Section 440(a) of the Antiterrorism and Effective Death Penalty Act ("AEDPA") precludes this court's jurisdiction over Contreras's Petition for Review, which was filed prior to the AEDPA's enactment. Section 440(a) reads as follows:
 
 
 14
 Any final order of deportation against an alien who is deportable by reason of having committed a criminal offense covered in section 241(a)(2)(A)(iii), (B), (C) or (D) ... shall not be subject to review by any court.
 
 
 15
 AEDPA, Pub.L.No. 104-132, § 440(a), 110 Stat. 1214 (1996) (to be codified at 8 U.S.C. § 1105(a)(10)). We recently held that Section 440(a) revokes the jurisdiction of the court of appeals over petitions for review pending on the date of the AEDPA's enactment. Duldulao v. INS, 90 F.3d 396, 398-99 (9th Cir.1996). Therefore, if Contreras is deportable due to "a criminal offense covered in section 241(a)(2)(A)(iii), (B), (C) or (D)," we do not have jurisdiction over Contreras's Petition for Review.
 
 
 16
 Contreras argues that Section 440(a) does not apply to him because he is deportable under Section 241(a)(11), not under Section 241(a)(2)(B). His argument is a technical one. Contreras concedes that he is deportable under Section 241(a)(11) of the INA for conviction of an offense relating to controlled substances. However, Section 602 of the Immigration Act of 1990, Pub.L.No. 101-649, 104 Stat. 4978 (Nov. 29, 1990) ("IMMACT"), renumbered the subsections in the INA that specify the grounds of deportability. Section 241(a)(11) of the INA regarding controlled substance convictions was renumbered as Section 241(a)(2)(B) under the IMMACT. The 1990 amendment did not change the substance of that section. The post-1990 renumbered sections do not apply to individuals who were given notice of deportation proceedings prior to March 1, 1991. IMMACT § 602(d). Contreras was given notice of deportation proceedings prior to March 1, 1991 and thus is deportable under a pre-1990 section, Section 241(a)(11). Contreras argues that Section 440(a) of the AEDPA applies only to the post-1990 renumbered sections and therefore Section 440(a) does not apply to him.
 
 
 17
 We reject Contreras's argument due to the plain meaning of Section 440(a). Clear and convincing evidence of legislative intent may be found in the specific text of the statute. Traynor v. Turnage, 485 U.S. 535, 542, 108 S.Ct. 1372, 99 L.Ed.2d 618 (1988). The language of Section 440(a) states that final orders of deportation are not reviewable if the alien "is deportable by reason of having committed a criminal offense covered in section 241(a)(2) ... (B)...." AEDPA § 440(a) (emphasis added). Under Section 241(a)(2)(B), an alien convicted of violating a law relating to a controlled substance is deportable. Contreras was convicted of violating a law relating to a controlled substance, and thus his offense is "covered in" Section 241(a)(2)(B). It is irrelevant that Contreras is deportable under Section 241(a)(11), the pre-1990 version of Section 241(a)(2)(B). Section 440(a) does not state that an alien must be deportable under Section 241(a)(2)(B); instead it states that the alien must be deportable for a criminal offense "covered in" Section 241(a)(2)(B). Section 440(a) applies to Contreras and we lack jurisdiction.
 
 
 18
 Contreras argues that Duldulao 's holding is erroneous. We do not consider this argument because a three-judge panel cannot overrule any prior Ninth Circuit decision; only an en banc panel may do so. Murray v. Cable National Broadcasting Company, 86 F.3d 858, 860 (9th Cir.1996).
 
 
 19
 Contreras argues that Section 440(a) of the AEDPA violates due process, Article III separation of powers and the equal protection component of the due process clause. Duldulao held that Section 440(a) does not violate either due process or separation of powers, and we are bound by that holding. 90 F.3d at 399-400. However, Duldulao did not address whether Section 440(a) violates equal protection.
 
 
 20
 Nonetheless, we decline to decide the issue of equal protection but will instead reach the merits under the doctrine of hypothetical jurisdiction. In some cases where jurisdiction is disputed the Court may assume, without deciding, the existence of subject matter jurisdiction in order to reach the merits of an appeal. In re Grand Jury Subpoena Issued to Bailin v. United States, 51 F.3d 203, 206 (9th Cir.), cert. denied, --- U.S. ----, 116 S.Ct. 472, 133 L.Ed.2d 402 (1995). We find that this case satisfies the elements of hypothetical jurisdiction. The merits of this appeal are not complicated and are resolved against Contreras. An analysis of whether this court has jurisdiction due to the constitutionality of Section 440(a) under the equal protection component of the due process clause is a difficult question. Further, this issue was first raised after initial briefing on appeal, and the record is not as fully developed as it should be to consider the equal protection issues properly. Accordingly, we forego deciding the issue of equal protection and proceed to the merits of the case.
 
 THE BIA DID NOT ABUSE ITS DISCRETION
 
 21
 Contreras argues that the BIA abused its discretion in denying his waiver of inadmissibility under Section 212(c), 8 U.S.C. § 1182(c). Such a denial is reviewed for abuse of discretion. Ayala-Chavez v. INS, 944 F.2d 638, 642 (9th Cir.1991). "The BIA abuses its discretion if it fails to state its reasons or to show proper consideration of all factors when weighing the equities." Liu v. Waters, 55 F.3d 421, 427 (9th Cir.1995). If the BIA affirms the decision of the IJ by adopting and incorporating the IJ's opinion, as the BIA did here, then we should "treat the IJ's statement of reasons as the BIA's and review the IJ's decision for abuse of discretion." Alaelua v. INS, 45 F.3d 1379, 1382 (9th Cir.1995). In determining whether to grant relief under Section 212(c), the IJ must look to the individual merits of each case and "balance the social and humane considerations presented on the alien's behalf against the adverse factors including the alien's undesirability as a permanent resident." Kahn v. INS, 36 F.3d 1412, 1413 (9th Cir.1994).
 
 
 22
 The IJ, and accordingly the BIA, did not abuse its discretion in denying Contreras's Section 212(c) petition. In a lengthy and comprehensive decision, the IJ set forth all of the relevant facts. The IJ then weighed the positive factors against the adverse considerations. The IJ concluded that Contreras's "time here as an immigrant plus his strong family ties present unusual or outstanding equities in his favor." However, on the negative side, the IJ noted Contreras's extensive criminal record since 1979. The IJ found it to be particularly disturbing that Contreras continued to commit criminal acts during the period from 1991 to 1993 after he had been notified of his potential deportation due to his drug conviction and after he realized that criminal activity could result in his deportation. The IJ found that Contreras did not demonstrate rehabilitation. The IJ concluded that Contreras was not entitled to relief under Section 212(a).
 
 
 23
 The IJ, and thus the BIA, properly and carefully considered all of the relevant factors, weighed the positive and negative considerations, and supported its conclusions with a reasoned explanation based upon legitimate concerns. Liu, 55 F.3d at 426-27. Our review is deferential. INS v. Elias-Zacarias, 502 U.S. 478, 481, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992). The IJ did not abuse its discretion.
 
 REHABILITATION AS A PREREQUISITE FOR RELIEF
 
 24
 Contreras contends that the IJ and the BIA erred by requiring him to establish rehabilitation as a prerequisite to obtaining Section 212(c) relief. Contreras argues that the following language from the IJ's decision reveals that the IJ viewed a demonstration of rehabilitation as such a prerequisite:
 
 
 25
 In this case, where a pattern of criminal misconduct is shown over the years, it is appropriate to expect the respondent to demonstrate reformation and rehabilitation.
 
 
 26
 In addition, Contreras points out that the IJ stated that it was Contreras's "task" to present proof of counseling.
 
 
 27
 Contreras correctly notes that "rehabilitation is only one among the many factors for the BIA to evaluate." Liu, 55 F.3d at 427. Contreras argues that in Matter of Edwards, Interim Dec. 3134, 1990 WL 385757 (BIA1990), the BIA disapproved of language in prior cases suggesting that a showing of reformation is a prerequisite to a favorable exercise of discretion. However, Matter of Edwards did not hold that mere use of language stating that an applicant with a criminal record will be expected to demonstrate rehabilitation proves that the IJ has improperly imposed rehabilitation as a prerequisite to granting relief:
 
 
 28
 With respect to the issue of rehabilitation, the Board noted in Matter of Marin ... and reiterated in Matter of Buscemi ... that a section 212(c) waiver applicant who has a criminal record "ordinarily" will be required to make a showing of rehabilitation before relief will be granted as a matter of discretion. This language has been interpreted in some cases as though a clear showing of reformation is an absolute prerequisite to a favorable exercise of discretion in every case involving an alien with a criminal record. To the extent that this language may be read as creating an absolute prerequisite to a favorable exercise of discretion, we withdraw from it. Rather, section 212(c) applications involving convicted aliens must be evaluated on a case-by-case basis, with rehabilitation a factor to be considered in the exercise of discretion.
 
 
 29
 Edwards, 1990 WL 385757 at * 11 (emphasis added); see also Matter of Roberts, Interim Dec. 3148, 1991 WL 353515 at * 11-* 12 (BIA1991). Finally, in 1994, we cited the same language with approval:
 
 
 30
 [T]o warrant a favorable exercise of discretion, an applicant with a criminal record "will ordinarily be required to present evidence of rehabilitation."
 
 
 31
 Paredes-Urrestarazu v. INS, 36 F.3d 801, 807 (9th Cir.1994) (quoting Roberts, 1991 WL 353515 at * 11).
 
 
 32
 Thus, the IJ and the BIA can expect an applicant with an extensive criminal record to demonstrate rehabilitation. If the applicant fails to make a showing, then such failure may be considered as one adverse factor to be weighed in the exercise of discretion. See Roberts, 1991 WL 353515 at * 11-* 12, * 17. However, all applications must be considered on a case-by-case basis, and a demonstration of rehabilitation is not a prerequisite to a grant of Section 212(c) relief. Liu, 55 F.3d at 427.[1]
 
 
 33
 Under these principles, the IJ's statement that Contreras should demonstrate rehabilitation was not an error under Roberts, Edwards, and Paredes-Urrestarazu, because failure to demonstrate rehabilitation was only one factor examined by the IJ. The IJ considered the individual facts of Contreras's case and weighed all of the relevant positive and negative factors. Contreras's failure to demonstrate rehabilitation was a significant factor in this case, but according significant weight to rehabilitation is permissible. See Ayala-Chavez, 944 F.2d at 642. In reaching his conclusion the IJ stated: "Carefully considering all facts, I find that [Contreras's] criminal record is simply too egregious to permit him to remain in the United States." Under these circumstances, the IJ and the BIA did not require Contreras to establish rehabilitation as an absolute prerequisite to obtaining relief. See Liu, 55 F.3d at 427.
 
 IMPOSITION OF CONDITION OF COUNSELING
 
 34
 Contreras argues that the IJ and the BIA erred in concluding that he did not demonstrate rehabilitation based solely on his failure to prove regular attendance at drug counseling. We have not specifically ruled on whether an IJ may rely solely on a petitioner's failure to demonstrate regular attendance at drug counseling to find lack of rehabilitation. Even if we adopted such a rule, Contreras's argument is without merit.
 
 We recently held:
 
 35
 [i]n order for us to give meaningful review to a finding regarding rehabilitation, we must understand what factors the INS considers in making such a determination. Obvious considerations include the lack of commission of any additional crimes; enrollment in and attendance at rehabilitation programs; statements of remorse; and letters of good character. The salience and weight of these and other factors may vary from case to case....
 
 
 36
 Georgiu v. INS, 90 F.3d 374, 377 (9th Cir.1996).
 
 
 37
 The IJ and the BIA considered all of the Georgiu factors in evaluating Contreras's rehabilitation. The IJ considered letters of reference, Contreras's failure to submit a letter from his parole officer, his failure to attend drug counseling sessions, and his statements that he is remorseful for his criminal record. The IJ considered the testimony of Contreras's family members and Contreras's statements on the question of rehabilitation. Finally, the IJ was concerned by Contreras's 1991-1993 misconduct, which he committed after he received his OSC and after he was aware that criminal activity could result in his deportation. The IJ noted that although Contreras had not been arrested in ten months, "the record reflects hearing was postponed four times during the 1991-1993 period ... because he could not stay out of prison. This two-year delay undercuts his ten-month trouble-free period."
 
 
 38
 The IJ and the BIA considered numerous positive and negative factors in determining whether Contreras demonstrated rehabilitation. Contreras's failure to attend counseling was not the sole factor in the determination.
 
 
 39
 Finally, Contreras alleges that the IJ and the BIA failed to consider factors relevant to Contreras's rehabilitation. Contreras points to his employment as a barber, his negative drug tests, and his decision not to associate with his friends who use drugs. This argument is without merit. In evaluating rehabilitation, the IJ and the BIA considered Contreras's "own statements on the question of reformation and rehabilitation." Earlier in his opinion, the IJ noted Contreras's statements on rehabilitation:
 
 
 40
 The respondent admitted that he was last imprisoned in January 1994 and, since his release, has been trying to reform himself. He pointed out that he is now gainfully employed as a barber. He ... no longer associates with his old companions.... He has been tested for drug use during parole and has never tested positive.
 
 
 41
 The BIA need not explain "how much weight it places on every piece of relevant evidence.... All that we require is that the Board provide a comprehensible reason for its decision sufficient for us to conduct our review and to be assured that the petitioner's case received individualized attention." Ghaly v. INS, 58 F.3d 1425, 1430 (9th Cir.1995). The IJ and the BIA met this burden.
 
 CONCLUSION
 
 42
 The Petition for Review is denied.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Contreras relies heavily on In re Catalina Arreguin de Rodriguez, Interim Dec. 3247, 1995 WL 314389 (BIA1995). In Arreguin, the BIA found that the IJ's statement that an applicant "must also convince the court that she has rehabilitated" left an "erroneous impression that an applicant may be barred from relief simply by a failure to demonstrate that she is rehabilitated." Id. at * 5. However, Arreguin does not require a reversal in this case. First, the language "must convince the court that she has rehabilitated" is stronger than the language used by the IJ, "it is appropriate to expect the applicant to demonstrate reformation and rehabilitation." Second, language similar to that used by the IJ was cited with approval by the Ninth Circuit in Paredes-Urrestarazu, 36 F.3d at 807. Finally, in Arreguin, the BIA did not reverse the IJ for using misleading language. Instead, the BIA reversed the IJ because it gave "greater weight to the favorable facts of record than did the immigration judge." 1995 WL 314389 at * 9, * 11