NOT FOR PUBLICATION

FILED

UNITED STATES COURT OF APPEALS

DEC 23 2020

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 19-30207 |
| Plaintiff-Appellee, | D.C. No. 1:18-cr-02011-LRS-1 |
| v. | |
| JESUS LANDEROS-MORALES, AKA David Walle-Lopez, | MEMORANDUM* |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the Eastern District of Washington
Lonny R. Suko, District Judge, Presiding

Argued and Submitted December 10, 2020
Seattle, Washington

Before: BERZON, MILLER, and BRESS, Circuit Judges.

Jesus Landeros-Morales appeals from his conviction for illegal reentry, in violation of 8 U.S.C. § 1326. He argues that the district court should have dismissed the indictment because his underlying deportation order was invalid. We have jurisdiction under 28 U.S.C. § 1291. We review this issue de novo, *United States v. Reyes-Bonilla*, 671 F.3d 1036, 1042 (9th Cir. 2012), and we affirm.

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

A defendant charged with illegal reentry may bring a collateral challenge to his underlying deportation order if he shows that (1) his "due process rights were violated by defects in his underlying deportation proceeding," and (2) "he suffered prejudice as a result of the defects." *United States v. Vidal-Mendoza*, 705 F.3d 1012, 1015–16 (9th Cir. 2013). Landeros-Morales argues that the immigration judge (IJ) in his 1993 deportation proceeding violated due process by failing to inform him that he was eligible for a discretionary waiver of relief from deportation under section 212(c) of the Immigration and Nationality Act, 8 U.S.C. § 1182(c) (Supp. III 1992) (repealed 1996). *See Vidal-Mendoza*, 705 F.3d at 1016.

Assuming without deciding that the IJ violated due process, Landeros-Morales is not entitled to relief because he cannot demonstrate prejudice. To show prejudice, Landeros-Morales bears the burden of showing that it is "plausible," and not "merely conceivable or possible," that the IJ would have granted him § 212(c) relief. *United States v. Valdez-Novoa*, 780 F.3d 906, 914 (9th Cir. 2015). In conducting the prejudice inquiry in the section 212(c) context, we weigh the defendant's positive factors, such as "family ties within the United States" and "a history of employment," against factors unfavorable to the defendant, such as "the nature and underlying circumstances of the exclusion or deportation ground at issue" and "the existence, seriousness, and recency of any criminal record." *Yepes-Prado v. INS*, 10 F.3d 1363, 1366 (9th Cir. 1993) (citing *Matter of Edwards*, 20 I. & N.

Dec. 191, 195 (B.I.A. 1990)). In addition, a defendant "who [has] been convicted of serious drug offenses, particularly trafficking," or whose "record reflects a pattern of serious criminal activity," must show "outstanding equities." *Ayala-Chavez v. INS*, 944 F.2d 638, 641 (9th Cir. 1991). Because of his 1988 drug convictions, Landeros-Morales is subject to this "higher standard." *See id.*

While we acknowledge Landeros-Morales's family ties, employment history, and other positive factors in the record, in light of his extensive and serious criminal history, Landeros-Morales has not shown it is plausible that the IJ would have granted him § 212(c) relief. *Valdez-Novoa*, 780 F.3d at 914.

To begin, in 1988, Landeros-Morales was convicted in federal court of conspiracy to distribute cocaine and possession with intent to distribute cocaine, resulting in concurrent 8-year sentences. The circumstances of this offense were serious, with Landeros-Morales selling a kilogram of cocaine to an undercover officer for $28,500. Upon Landeros-Morales's arrest, police discovered another kilogram of cocaine and a revolver in the vehicle used for the transaction. At the time, Landeros-Morales was part of a complex drug trafficking organization that was also linked to numerous firearms.

That Landeros-Morales has not shown "outstanding equities," *Ayala-Chavez*, 944 F.2d at 641, is confirmed by evidence in the record that by 1993, Landeros-Morales had amassed a substantial criminal record under various aliases. While the

district court noted that Landeros-Morales's Immigration and Naturalization Service (INS) file "raise[d] legitimate questions" about whether he committed all of the crimes attributed to him under these aliases, the district court also found "strong evidence" that Landeros-Morales was responsible for many of the immigration and criminal violations set forth in his INS file. Reviewing for clear error, *Reyes-Bonilla*, 671 F.3d at 1042, it is apparent that at least some of the offenses at issue can be attributed to Landeros-Morales.

In particular, "David Walle-Lopez" was apprehended in 1974 for smuggling eleven illegal aliens into the United States, and in 1975 for smuggling two more. Landeros-Morales does not dispute that he is "David Walle-Lopez"; in fact, as the district court noted, Landeros-Morales signed his name "David Walle-Lopez" on various court documents during this case. In addition, "Trinidad Mendoza-Sanchez" was arrested in 1982 for smuggling four illegal aliens. Photographs in the record support the government's position that Landeros-Morales is "Trinidad Mendoza-Sanchez."

This additional criminal history further confirms our conclusion that Landeros-Morales has not met his burden to show "outstanding equities." And while Landeros-Morales cites cases that he claims show the IJ would have granted him § 212(c) relief, those cases involved defendants with less substantial criminal histories and convictions and more compelling positive factors. *See, e.g., In re*

*Catalina Arreguin de Rodriguez*, 21 I. & N. Dec. 38, 42 (B.I.A. 1995). Because Landeros-Morales has not demonstrated prejudice from the IJ's alleged due process violation, the district court did not err in denying Landeros-Morales's motion to dismiss the indictment.

**AFFIRMED.**